UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANTONIO WEST, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) )   2:04 CV 203 JM |
| CITY OF GARY, *et al.*, | ) ) ) |
|     Defendants. | ) |

## O P I N I O N

This matter is before the court on a joint motion for partial summary judgment[1] filed by defendants City of Gary, Garnett Watson and Lindal Hairston. RULE 56 directs this court to enter summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the motion, the court must construe all of the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 737 (7th Cir. 2004). The Court of Appeals has concisely summarized the summary judgment methodology on many occasions, *e.g.*:

---

[1] The motion seeks "partial" summary judgment only in that it does not seek disposition of the claims against another defendant, Martinez Newman; the moving defendants otherwise seek judgments in their favor on all claims.

> A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence, nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1087-88 (7th Cir. 2000) (citations omitted).

In the one-count complaint initiating this action, plaintiff Antonio West alleges that he was deprived of rights under the fourth, fifth and fourteenth amendments to the United States Constitution when he was shot by Gary, Indiana Police Officer Martinez Newman during the course of his arrest, entitling him to damages under 42 U.S.C. § 1983. According to West, he was attempting to surrender when he was shot for no reason by defendant Officer Newman. West alleges that the City of Gary is liable because Officer Newman shot him pursuant

to official policy or custom of the Gary Police Department. Defendant Hairston was present at the scene of the arrest as back-up, and defendant Watson is the Gary Chief of Police.

Moving for summary judgment, the City of Gary[2] argues, first, that to the extent, if any,[3] that West is alleging state-law causes of action, those causes are barred by his failure to give timely notice of his claims within 180 days as required by the Indiana Tort Claims Act. Ind. Code § 34-13-3-8. Failure to give such notice bars any subsequent suit. See *Cantrell v. Morris*, 849 N.E.2d 488, 495 n. 5 (Ind. 2006). It is undisputed that West was shot on May 31, 2002, and did not give the City of Gary notice of his claim until January 7, 2003, that is, 221 days later.

West's response is that he is asserting state-law claims, and that the Indiana Supreme Court held in *City of Fort Wayne v. Cameron*, 267 Ind. 329, 334, 370 N.E.2d 338, 341 (1977) (decided under a predecessor statute) that a plaintiff who is physically and mentally incapacitated from giving the required notice of

---

[2] The court will use the three defendants' names when necessary to identify them individually, and use "defendants" as a joint reference when convenient to do so. In addition, all references to the City of Gary should be understood to include the official-capacity claims against the individual defendants.

[3] The complaint does not appear to plead any state-law cause, but its jurisdictional allegation states that plaintiff "invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law." Complaint ¶ 2.

claims has a reasonable time after his disability is removed to give notice. West asserts that he was treated for pain and emotional distress for several months following his shooting, thus it would not be "unreasonable to extend his tort notice deadline by approximately 30[4] days." Response Memorandum at 2-3.

The Indiana cases on this subject establish that, to extend the deadline for giving notice of claim, the plaintiff's incapacity must be severe enough to prevent the plaintiff from managing his or her property and/or from providing self care. *See, e.g.*, *Polick v. Indiana Dept. of Highways*, 668 N.E.2d 682, 683 (Ind. 1996) (plaintiff rendered quadriplegic in auto accident could provide no self-care in initial three days after accident, and had 180 days thereafter to give notice.) Undisputed medical records in the present case show that by June 17, 2002, West's wounds were healing well, and that by June 21, 2002, he had been playing basketball. Undisputed court records, from the state criminal case resulting from his arrest, show that West appeared in court on June 6, 2002 and again on June 14, 2002. It appears that on July 1, 2002, he himself moved for a speedy trial. While the court does not mean to minimize the severity of West's injuries, this evidence establishes that he was not incapacitated for 41 days following his

---

[4] It would be necessary to extend the deadline 41 days, by the court's count.

4

shooting so as to make his notice of claims timely. Defendant City of Gary is entitled to summary judgment on any state claims.

Next, the City of Gary argues that it cannot be held liable under § 1983 because the record is devoid of any evidence suggesting that the shooting resulted from an unconstitutional policy or custom. Municipalities are liable under § 1983 only when a plaintiff is deprived of a federal right as the result of official policy or custom, or a deliberate act by a municipal policy-maker. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Davis v. Carter*, 452 F.3d 686, 691 (7th Cir. 2006).

West's response is twofold. First, West argues that his injuries resulted from a policy of providing inadequate training to Gary Police Department officers, resulting in the conduct of the officers who effected his arrest. Second, West argues that his injuries resulted from a policy of "allowing officers who had deliberately intimidated and 'roughed-up' citizens to remain on the police force." Response Memorandum at 4.[5]

---

[5] The City of Gary argues that these are alternate grounds which are so inconsistent as to be mutually exclusive. According to Gary, a number of cases–although, apparently, none in this circuit—recognize that there is no need to train officers not to engage in conduct which is obviously wrong, such as the conduct West alleges here: shooting him for no reason. *See, e.g.*, *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (no "patently obvious need for the city to specifically train officers not to rape young women."). However, another case cited by Gary recognizes that while that may be the general rule, when a municipality has notice of a pattern of misconduct it

5

West's entire argument and evidentiary showing on his claim of inadequate training is as follows:

> A close inspection of those records [the officers' training records provided during discovery] coupled with selections from the officers['] disciplinary files shows gaps in training that lead to the violation of West's constitutional rights. Neither of these officer's [sic] had training after the academy that would have adequately addressed this incident with Mr. West.
> The inadequacy of training is clear, and the likelihood that the training would result in a constitutional violation so great, that the policy makers can reasonably be said to have been deliberately indifferent.

Response Memorandum at 4. Essentially this is a *res ipsa loqitur* argument that more or better training would have somehow prevented West's shooting.

Such an argument does not satisfy West's burden to point to sufficient evidence in the record to allow a jury to find for him on each element of his claim. To succeed on a failure to train claim, a plaintiff must show inadequate training in a "relevant respect," and then show that this deficiency is "closely related" to the injury ultimately suffered. *City of Canton v. Harris*, 489 U.S. 378, 388, 391, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Palmquist v. Selvik*, 111 F.3d 1332, 1344-45 (7th 1997). Simply arguing that there are unspecified "gaps" in

---

must institute appropriate training or supervision: if not, it shows deliberate indifference for which it may be liable. *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992).

training isn't enough to do this. Moreover, West's focus on the training of the officers involved in this incident is misplaced. The Court explained in *Canton* that the focus must be on the adequacy of the training program itself, not the training of a particular officer. *Canton*, 489 U.S. at 390-91, 109 S. Ct. at 1206. Even if there are "gaps" in these particular defendants' training, that does not show that the City of Gary has a constitutionally-inadequate training program.

Alternatively, West argues that the City of Gary is liable because of a policy or practice of "allowing officers who had deliberately intimidated and 'roughed-up citizens to remain on the police force." Response Memorandum at 4. According to West:

> Officer Martinez Newman had committed at least two offenses of this nature prior to the incident involving Mr. West. See Exhibit B. Officer Lindal Hairston had committed at least one major offense prior to the incident involving Mr. Hairston.

Response Memorandum at 4. The exhibits West refers to appear to be (exhibit B) two "Gary Police Department Internal Affairs Disposition Form[s]" from September and December of 1998, and accompanying documents, showing that complaints against Officer Newman were sustained, and what appears to be (exhibit C) a Gary Police Civil Service Commission order dated February 6, 2003,

7

terminating Hairston's employment because of an incident that occurred in November 2001.

As the City of Gary points out in its Reply Memorandum, exhibits B and C are not sworn or certified as required by FED. R. CIV. P. 56(e) and therefore should not be considered by the court, leaving West without evidentiary support for his argument. Even were this not true, the three incidents described are somewhat remote in time from the incident involved in the present case, and are not similar. All three involve rude treatment and unnecessary physical force used against citizens, none involves a shooting. In the two incidents involving Officer Newman it does not appear that his gun was employed at all. Finally, the ultimate result of the incident involving defendant Hairston was his dismissal from the force, which goes against West's theory that the City of Gary should be held liable for allowing bad apples to remain on the police force. Thus, even considering West's exhibits for all they are worth, these three incidents do not establish a municipal policy or custom, and the City of Gary is entitled to summary judgment. *Cf. Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (three incidents over a four-year period are too few to show a municipal custom).[6]

---

[6] In *Gable* the three incidents involved towing of automobiles during a period when 181,911 vehicles were towed. West has not provided any evidence of how many

Defendant Chief of Police Watson, in his individual capacity, argues that he is entitled to summary judgment because there is no evidence whatsoever that he was personally involved in the incident in question. Because § 1983 does not create vicarious liability, a plaintiff must establish a defendant's personal involvement. *Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005); *Payne v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998).

West's response, which is part of his explanation of municipal policy or custom, is that Watson is liable because he "engaged in the setting of goals and determination of how those goals would be achieved that effectively made policy and/or condoned custom by ratifying the unconstitutional and/or illegal actions of officers Newman and Hairston," and that Watson "had actual prior notice of the officers' egregious behavior toward citizens and thereby rendered it the policy of the city." Response Memorandum at 4, 5. For the reasons explained above, the three prior incidents West has identified do not establish an unconstitutional policy or custom, and as West has provided no evidence of

---

officers were on the Gary Police Force during the period in question or so much as an estimate of how many police–citizen encounters occurred during that time.

Watson's personal involvement in the incident in question, Watson is entitled to summary judgment.[7]

Finally, defendant Hairston, in his individual capacity, argues that he is entitled to summary judgment because he had no personal involvement in the alleged incident because the undisputed evidence is that he was a back-up officer during the arrest and "did not lay a hand on" plaintiff West. Memorandum in Support at 3. West's response is that because the evidence shows that Hairston was "standing with his weapon drawn and 'trained' on" West, Hairston was "an active participant" and "in conjunction with Martinez Newman, created the circumstances that lead to Mr. West being in fear for his life and his own personal safety." Response Memorandum at 5, 6.

If this were a situation where the evidence suggested that Hairston kept his gun pointed at West to enable Newman to attack and ultimately shoot West, then a question of fact on Newman's personal involvement would exist for a jury to determine. Instead, as West himself and his witness, his Aunt Esther Brown, describe the incident, he was attempting to surrender, when Newman suddenly and for no reason shot him. Unless Hairston had witnessed Newman do the same thing on a prior occasion(s)—and there is no evidence of that—this would

---

[7] West's exhibits indicate that at the time of at least one of the prior incidents, the September 1998 incident involving Newman, Watson was not even the chief of police.

be as surprising to Hairston as it was to West. On the undisputed evidence, there is no conduct by Hairston for which he can be held liable. *Cf. Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989) (police officer pointing gun at a suspect is not in and of itself actionable).

For the foregoing reasons, defendants' motion for partial summary judgment (DE # 40) is **GRANTED**. The court withholds entry of a final judgment until all claims in this case are adjudicated or otherwise disposed of.

**SO ORDERED.**

Enter: September 29, 2006

\_\_s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT